Your Honor, may it please the Court, Richard McCracken for the appellant. The District Court should have stopped with a determination of arbitrability. Arbitrability is actually a very straightforward matter. It does not involve getting into the merits. There is a collective bargaining agreement. It has not one but two arbitration clauses, the validity of which was never challenged. The matter in question is something that clearly comes within the scope of both arbitration clauses, but particularly the one concerning the resolution of negotiations. At that point, the Court should have stopped. Instead, the District Court got into the question of the merits, the merits of the repudiation or asserted repudiation of the collective bargaining agreement. I'm going to interrupt probably the train of your argument, but this I think will be a quick question. In Article 16, Section 4 of that agreement, there's a provision that says each employer hereby waives any right it may have to repudiate the agreement, and then it goes on. Neither party discussed that provision. I was trying to figure out why. Is there some simple answer as to why it's not relevant to our analysis? It is relevant, Your Honor, but it's not even really necessary because in construing Article 16, Section 1, this Court over a 10-year period of time stretching from 1985 to 1995 found that the provisions of Article 16, Section 1 were sufficient to constitute such a waiver. So your position is regardless of what Section 4 says, under Section 1 the employer never had a right to repudiate? That's right. The employer might assert a right to repudiate, but that question would go to arbitration as it did in the first instance here. And what the Court found in all the cases between Huggins and the 1995 final decision in this series in beach air conditioning was that by virtue of Article 16, Section 1, and Article 8, Section — Article 10, Section 8, which is the interest arbitration provision, the parties had contracted away from the NLRB rules, including all the rules about repudiation. So the — but you're quite right. Well, I hear you, but I'm just — if I look at Section 4, why doesn't that speak much more directly to the issue than Section 1? It does, but it also says during the term of any extension, modification or amendment to this agreement. It says during the term of this agreement. So there is a question whether the repudiation here occurred during the term of the agreement, because the agreement by its terms would have expired on July 1, 2016. That's what I wondered about. But then it says any extension, which I assume that — I don't know. Is an extension separate from the kind of continuing effect provision that exists? Sometimes the parties will enter into an explicit extension of their collective bargaining agreement. We'll do this for another year, but there's a fixed end point kind of thing. Exactly. And sometimes it will be one that has a trigger provision that either party can terminate the extension with some day's notice. Yeah. Now, some versions of this agreement do not contain the reference to Article 10, Section 8, the interest arbitration provision. And so in those agreements where there isn't that reference, then this would be — Section 4 would become particularly relevant, because Article 16, Section 1, provides that, first of all, the contract continues in effect during negotiations, and then even when negotiations come to an impasse, it still continues in effect if there is Article 10, Section 8. If there weren't that second clause about Article 10, Section 8, then Section 4 would become very relevant. Okay. But the combination of all three provisions, these two in Article 16 plus Article 10, Section 8, have been found by this Court repeatedly to manifest an intent to not allow any repudiation of the agreement, in fact, not allow any of the normal rights that the parties have following the expiration of a collective bargaining agreement, including any strike by the union. So I just want to be clear. You're saying that once an employer signs this agreement, there's no way for them to get out of it ever? No, not — they get out of it after the next term, because as Jason Manufacturing held, the National Joint Adjustment Board may not impose interest arbitration in a new agreement. And in fact, the National Joint Adjustment Board decision in this case specifically took that provision out of the imposed agreement because of Jason Manufacturing and also because of the Adjustment Board's rules that it will not impose a permissive subject of bargaining like interest arbitration over a party's objection. Right. So in this case, the panel actually removed several provisions because of that objection. So what the Court said in both Williams, which is not a sheet metal case, but a hotel employee's case, Williams v. Cafeteria Employees, and in Jason was that you can do this once, but you can't do it after that. So it's not a perpetual agreement. And those are — so the initial term is usually for — this was re-upped for four years. Is that correct? That's correct. What was the initial term on this one? It was actually signed in 2014 and had an expiration date of July 1, 2016. But it was signed during the midterm of the standard agreement, so I believe that the standard agreement had a term of three or four years. But again, this was midterm, so it only lasted for about two before the renewal. Can you talk about the impasse here? Was there — I was having a hard time figuring out whether there was actually a lot of negotiation about this, or was this a situation where the union said, hey, we want to re-up, and you just didn't hear anything? I mean, was there actually conversations between the parties and negotiations that took place? Yes. And that's reflected in some of the correspondence, because when Lorraine Taylor, the president of the company, wrote to the union on January 23, 2017, after the union had invoked arbitration, she listed some of the things. Well, but I guess that's my point. The union invoked arbitration saying there had been an impasse. Oh, I'm sorry. You were going to tell me she was recounting something that happened previously. Yes, that's right. In her letter, she describes the nature of the problems that she has or her company has with the contract. And specifically, the ones she talks about are the cost of the contract or the area in which this company performs work,  in addition to supply manpower to them. And those issues were addressed in the panel award as well, because in addition to changing the terms that I mentioned to you, the agreement also doesn't make the economic package retroactive. The contract expired July 1, 2016, but the panel decision makes the economic package, all the wage increases and fringe benefits effective the following May 1, 2017. So there was a break there. Also, because of the nature of this small company, there were special provisions ordered allowing a 4-10 work week and also the use of more lower-paid classifications in this particular company, a departure from the standard agreement. It also directed the parties, the employer and the union, to get together to figure out the manpower problem. So the objections that were raised in the negotiations were actually addressed in the arbitration decision as well. But if, in fact, we're supposed to send this to an arbitrator, as you have aptly argued, then we don't need to reach the question, do we? No, you don't. And the second part of this is, would you once again tell me why the one-employee doctrine doesn't amend what you've just been telling us? Because the one-person doctrine is an NLRB rule. It's a statutory rule. I understand what it is. And it's just like the statutory rule derived from Section 8F, that in a pre-hire agreement, the employer may repudiate the agreement at its expiration. And there are other forms of NLRB rules. But if you look at Westlake Development, it says employers can repudiate the pre-hire agreement under the one-employee doctrine. Yes. The one-employee doctrine and pre-hire agreement are actually separate doctrines. The one employee is older than the 8F pre-hire agreement. As a matter of fact, that doctrine predates 8F itself. I agree. So they are two separate doctrines, but very similar because they both allow an employer to repudiate a collective bargaining agreement. There are other NLRB doctrines allowing repudiation of a collective bargaining agreement as well. So where do I find some authority for the fact that that, since this is a one-employee company, that they can't repudiate this? Because they — this Court has held in that series of cases between Huggins and Beach Air Conditioning that these parties have contracted out of those NLRB doctrines. There may not be any statutory duty to bargain, but there is a contractual duty to bargain. That is what Article 16, Section 1 imposes by virtue of the agreement of the parties. And in American Metal Products, there was a no-employee unit, exactly like this case. There were no employees. Yet this Court confirmed the National Joint Adjustment Board order in that case. Because? Because there was no — because the Court said — Because we had an interest arbitration clause? That's the difference. Westlake did not have an interest arbitration clause. There were other significant differences, too. For instance, the fact that the employer repudiated the contract there two years before the union made any assertion of any rights, whereas here it should be the opposite. But your position here would be he couldn't have repudiated it before. Well, I guess he could have agreed. The best he could have done here is come in more than 90 days before the expiration of the contract and said, I don't want this interest provision, arbitration provision, to be in the next contract. Right. And he didn't say that, but he did say after the union had requested arbitration that he didn't want that in the next contract, and it wasn't in the next contract. Because whenever a party objects to the inclusion of that interest arbitration provision, the National Joint Adjustment Board will never impose it. And that's what happened here. So in the new contract he can repudiate that. Absolutely. Except it was a four-year term. Why was it a four-year term? Because that is the standard term for the area contract in the Portland area. For an extension, not for an initial contract. Each collective bargaining agreement has a term that is agreed to by the parties, and it ranges anywhere from one to four to five years. But each time the contract is renegotiated, the parties determine what its length will be. This contract that was imposed by the panel was based upon the area contract between the union and the multi-employer bargaining association. So the union and the association determined what the length of this current contract would be. And then that standard contract was the one that the panel imposed on the parties here, the union and Taylor, with a number of exceptions, the ones I've described to you. So if we disagree with you that the repudiation is a question for the arbitrator and it is instead for the court, what do we do? The decision should be that the— Supposing I disagree with you. Supposing I say the court should make that decision. At that point, I'm at the point where I have to say, did the district court correctly determine the question of repudiation? Am I not? And the answer lies in the cases I have referred to previously because in those cases in particular, I would cite you to both American Metal Products and Beach Air Conditioning, the last case in that series. The court was not dealing with the question of whether repudiation should go to the arbitrator. The question was whether the employer had effectively repudiated so that the arbitration award should be vitiated. And what the court held was no. The parties had contracted out of those NLRB doctrines, had contracted away their rights. The employer contracted away its rights to repudiate. Of course, the union contracted away its right to repudiate as well. Sometimes the union wants to repudiate. But also the union contracted away the rights it would normally have after the expiration of an agreement, namely the right to strike to get a better contract. And this really applies to a variety of NLRB doctrines. Going back to the very first case in the series, Huggins Sheet Metal, that wasn't a repudiation. But what happened instead was that the employer said that we've reached an impasse. Under NLRB rules, I get to unilaterally implement all of the changes that I want. And that includes doing away with Article 10, Section 8. I don't want that interest arbitration, and I have a right to impose that change. And this court said, no, you don't, because under Article 16, Section 1, you contracted away all those NLRB rights. You've used up your time, but we'll give you some time for rebuttal. Good. Thank you very much. Great. Let's hear from counsel for the other side. May it please the Court, Michael Garone for the appellee Taylor Sheet Metal. As recognized by the district court below, the result in this case is dictated by this court's decision in Westlake Development. In that case, as in this case, the parties entered into a pre-hire agreement under Section 8F of the Act. In that case, as in this case, the employer employed no more than one individual and repudiated the Section 8F agreement on the basis of the NLRB's long-established one-employee unit rule. What do I do with American Metal Products, which says interest arbitration clauses trump the one-employee doctrine? Your Honor, this case does not, the American Metal Products case does not involve application of the one-employee unit rule. The unit in that case had two employees. Well, I understand, but if you read the language thereof, it's no question that if we have an interest arbitration clause, the one-employee doctrine does not survive. Your Honor, I don't think it's clear. In fact, in American Metal Products, if you read it carefully, the agreement at issue was not even a pre-hire agreement under Section 8F of the National Labor Relations Act. The Court makes that clear at the end of the decision. In addition, the American Metal Products… At 1455, I read, the one-employee unit doctrine does not apply to CBAs with interest arbitration clauses. But, Your Honor, nine years later, you have the… I mean, I read the language. Right. You have the Westlake case nine years later, Your Honor. But the Westlake case does not even deal with an interest arbitration clause. It has nothing to do with it. It has no interest arbitration clause involved in it. Your Honor, the issue is really not whether there is interest arbitration or not. The issue is that the NLRB has long held that when you have no employees or only one employee, there can be no collective bargaining agreement. And an employer has the right to repudiate the collective bargaining agreement at any time during the term of the agreement or after expiration. Unless the employer gives up that right in the agreement itself. And that's what we have here, right? Your Honor, the provision that you mentioned, Article Section 16, was never raised in the briefs by the union, as you pointed out. And we frankly think that, no, an employer cannot waive the right to repudiate an agreement under the one-employee rule because there can be no collective bargaining agreement without a collective. There has to be more than one employee to have a collective bargaining agreement. And, in fact, Westlake has been followed by both the Sixth and the Seventh Circuit on that point. And, in fact, in the Sixth Circuit, in the Baker Concrete case, says that when the employer employs no more than one employee, the pre-hire agreement is nugatory, of no force in effect, as the very concept of collective bargaining presupposes there is more than one employee who desires to bargain. Now, Your Honor, if my client had two employees, even during the term of this imposed agreement, those two employees could get together and say, we no longer want to be represented by the union. And they could file for a decertification petition, and then that contract, if they voted to get rid of the union, would be set aside and would be void. Because we have no employees, the board has recognized that we cannot have an election in order to obtain that same result. And so the board equates having no employees with a decertification petition at the moment that the employer decides to repudiate. And that's what happened here. The employer here has the right to repudiate under the one-employer doctrine at any time. They can do it today. Even though there's been a four-year contract imposed upon them, I suppose we could re-repudiate today. It doesn't matter when we do it. It doesn't matter if we do it before arbitration, after arbitration, before the contract expires, or after the contract expires. We have the absolute right to terminate the agreement under the one-employee unit rule. Okay. Well, help me understand this, because I look at the two main cases they cite, interstate distributor and camping center, or camping construction, rather. And I read those cases, and they seem to say that when you all get involved in a dispute about whether a repudiation is effective or not, that's for the arbitrator to decide. And I guess I just don't see a way around that conclusion. So help me with that. So, Your Honor, in the interstate distributing company, the court notes, I believe it's at footnote four of that case, that there is an exception. And the exception comes under the Ion Construction Company case, which was a case where the employer had no employees. And the interstate distributing case says, Ion Construction and Mesa Verde, another case from this court, permit a district court to decide in the first instance whether an employer has effectively repudiated a Section 8F pre-hire agreement. The employer's right to repudiate is created by and set forth specifically in a federal statute rather than as here in the collective bargaining agreement itself or in a body of common or other law applicable generally to contract matters. So in the interstate distributing case, there was a specific exception carved out in footnote four of that decision in which the court recognizes that the one-employee unit rule poses different issues than a typical case of repudiation. And I would point out that counsel, when he talks about these line of cases, beginning with I think he says Huggins case, he says there's a long line of cases, those cases were not one-employee unit cases. There's only one employee unit case that really applies here, and that's Westlake Development. And that case was decided years after the American Metal Products case that counsel put so much emphasis upon. And it is also a case which did not have an interest arbitration provision. Right. But, Your Honor, even with the interest arbitration provision and even with the arbitration decision which imposed upon my client who has no employees, a four-year— Just a minute. Your client has an interest arbitration provision in his contract, right? That's true, Your Honor. And the American Metals Products, which is the case he cites, suggests, and I read you, the one-employee unit doctrine doesn't apply to CBAs with interest arbitration clauses. That's right there. And then we get to Westlake and it doesn't have any interest arbitration provision in it, and you want me to say Westlake has superseded American Metal Products? Yes, because American Metal Products, Your Honor, number one, that was not necessary for the decision in the case. But just a minute. Westlake doesn't even talk about an interest arbitration provision. It doesn't even say anything about it. Right, because, Your Honor— And now I'm going to interpret Westlake to undo the law as to interest arbitration provisions when it doesn't even have it in the case? Your Honor, again, I would— I mean, I'm just having a tough time. I just want you to concentrate on that issue. You're not going to buy me without having me say, why does Westlake have anything to do with this when it didn't even have an interest arbitration provision therein? Because, Your Honor, the interest arbitration clause is not the defining factor in the ability of an employer to repudiate agreement under the one-employee unit rule. Actually, it is if you're going to contract it right in your contract. It makes a lot of difference. That's, frankly, Judge Watford's question. It's right there in your contract. So, Your Honor, if we had two employees or 50 employees, then we could get out of this agreement within the four years, but because we have no employees, we can't get out of the agreement? That turns the National Labor Relations Act rule on its head. The reason why we should be able to get out of this agreement is because when you have no employees, you cannot have majority support for a union. The whole concept of having a collective bargaining agreement is that you have a bargaining group or a bargaining unit that wants to be represented. And if we had two employees, like I stated, we could desert if the employees wanted to, and we could get out of the agreement, but because we have no employees, we can't get out of the agreement in any way for the next four years? To me, that makes no sense. And I think, ultimately, Westlake concentrates on the one-employee unit rule and the reasons for the rule. In the American Metal Products case, there were two employees. Theoretically, they were ineligible to vote because they were related to the owner of the company, but there were more than one employee. So I would suggest that the statement about the one-employee unit rule in that case is dicta, Your Honor. It is not entitled to be followed. But then nine years later, you have a detailed discussion of the one-employee unit rule, and then when you look at the Sixth and Seventh Circuit cases, which follow Westlake, those cases also talk about the reason for the rule. And it makes really no sense to say that an employee with no employee or an employer with no employees is stuck with an agreement for four years, whereas an employer that does have employees has an avenue to get out from under the agreement. Can I ask you to go back to the question I posed earlier? Because I'm still stuck on why isn't this a question for the arbitrator. So you addressed one of the two cases that I cited to you. You did not address camping construction, which I read that case as saying after the NLRB's decision in DECLA. DECLA, is that how you say it? I don't know how to say it. That we said there that interstate distributor is going to be the standard, not ion construction going forward. And so I come back to that case. You didn't address it before. I just want to give you a chance. Yes, Your Honor. Thank you so much. So in camping construction, Your Honor, the court predicts again in DICTA the demise of ion construction because it assumed that DECLA applied to all issues of repudiation of Section 8F agreements. So before DECLA, an employer could repudiate a Section 8F agreement at any time during the term of the agreement or after on any grounds. After DECLA, the court basically said you cannot repudiate during the term of a Section 8F agreement. You have to wait until expiration. Now, the court in camping construction was not thinking about whether the one-employee unit rule would survive DECLA or not. And therefore, they made this kind of broad statement that ion construction would kind of go away on its own motion or just based on the fact that there would be no more cases under the pre-DECLA standard. The court wasn't thinking of the fact that the one-employee unit rule survives after DECLA and still holds that you can repudiate at any time, even during the term of the agreement. So the prediction of the demise of the case was premature because it wasn't based upon the fact that after DECLA, the NLRB decided and made it clear that the one-employee unit rule still applied, it was a longstanding rule, and repudiation could still occur during the term of an agreement. So we don't believe that camping undermines ion construction in the Mesa Verde case to the extent that there is an exception to the interstate distributing rule for one-employee unit cases. And so that would be my discussion of that, Your Honor. As I stated earlier, Your Honor, the AMP case that is being discussed by Your Honor was a case that was not an 8F case. That was a collective argument of Section 9A. I understand what it was, but I also understood, and I was trying to read through the law therein as to the general law applied, and I didn't see where the one unit was outside of that, and therefore it seemed perfectly obvious why they would discuss that a one-employee unit doctrine doesn't apply. Right, but Your Honor, if the contract in the AMP case, I'll call it, if that case is not an 8F case, then it is a collective bargaining agreement under Section 9A of the Act, and under Section 9A of the Act, the calculus is different in terms of reneging on an agreement or repudiating an agreement during its term. So I would suggest that the discussion really is not very helpful and that the true case that you should really look at and that the district court relied upon was the Westlake development case, which is really on point because we don't believe that it makes any difference. Interest arbitration or not, you can repudiate. But you really don't have a case about that. Only you're using the doctrine you say is espoused in Westlake. Yes, and it's the doctrine that's been recognized by the NLRB for many years. I understand where Westlake goes. I'm not saying that. I'm just trying to make sure I understand your argument. Yeah, and Your Honor, I think that... Briefly, let me just ask a question. Did your client properly repudiate? First of all, we've heard that he didn't have a contractual right to repudiate, but if he did have a contractual right to repudiate, did he properly repudiate here? Yes, number one, he had a statutory right to repudiate, Your Honor, and that statutory right cannot be waived, and I'm assuming that's why they didn't raise it in their brief, this Section 16 that Judge Watford mentioned. I'm not really prepared to argue in detail why that should apply, but they've never made the argument that it does, so I think they've waived it. But, yeah, we properly repudiated the agreement, and we had the opportunity and the right to do that under the statute. Didn't he try to repudiate it after the agreement was already sent to arbitration? Well, Your Honor, in January of 2017, there were some discussions with Mrs. Taylor and some of the union folks, and she made it clear they wanted out of the agreement. They had no employees. But just a minute, if you'd answer my colleague's question, because the facts here are pretty straight. The union opened the CBA under Article 16 on March 9. Negotiations were attempted on January 12, 2017. The union invoked the interest arbitration provision. All of this happened before any letters were sent. Well, Your Honor, in the January 23 letter, there is reference made, that's ER 25, to discussions between the employer's president. But discussions doesn't say we're going to get rid of this. Right. The first time I can think you have anything, and I think your arguments in your brief are, that it all happens when they sent the letter to the union, January 23, 2017, or when they sent the letter to the NFAB on March 21, 2017. And, Your Honor, that's what I believe the district court ruled, that the repudiation occurred in March. But there were discussions, and back to your question, there really were no negotiations in this case. The employer has always basically said they wanted out of the agreement. There has been really no substantive discussions, negotiations that would lead to an impasse. And the fact of the matter is that it doesn't really matter when they repudiated. They had the right to repudiate at any time. So thank you, Your Honor. Thank you, counsel. I appreciate your argument. Let's put two minutes on the clock for rebuttal. Thank you. First of all, Ian. Ian was not a one-person unit case. In fact, Ian had six employees when the repudiation occurred. I'm looking at the decision where it states, Ian made no attempt to send this letter to any of six painters whom it had employed in 1982. This is an 8F case. Counsel, can I just ask, why are you so determined, why is the union so determined to impose a four-year contract on an employer who doesn't have any employees currently? We don't know how many employees it has currently. Well, I think we just heard a representation. I mean, are you suggesting that they're not being truthful to the court? I think that they were truthful when the record in this case was made a year ago, that they didn't have any employees. But your concern is that they may get employees in the future, and that's why you're so adamant about keeping this in. Yes, this is what happens in the construction industry. It's a fluctuating industry. Someone may have no employees today and get a job and have 12 employees tomorrow, and that happens a lot in this industry. That's one of the reasons for 8F is because of the seasonal and fluctuating nature of construction employment. But there's no question that an 8F contract may be repudiated. There's also no question that the right to repudiate an 8F contract may be waived, and that's what this court has held several times about 8F contracts. Your colleague, opposing counsel, suggested that they have a statutory right to repudiate that cannot be waived by contract. I didn't understand your briefs to be arguing quite as forcefully as you argued here in argument that they've waived it. Can you address whether there is a statutory right quickly in eight seconds? There is a statutory right. There's not a statutory right. There's an NLRB policy allowing repudiation of a one-person unit case, just as there's an NLRB policy allowing repudiation of an 8F agreement. And there are other reasons for repudiation as well, but what this court has held over and over again is that the statutory right to repudiate is not the same as the contractual agreement to negotiate. So as the court said in AMP, AMP's duty to bargain arose from its collective bargaining agreement and not from statutory obligations, and that's why the court came to the conclusion that even though AMP had no statutory employees at all, none, that was a one-person unit case. It was only the owner and his three sons, none of whom were employees within the meaning of the NLRB, NLRA, because they're all excluded specifically. It was a no-employee unit case. And this court said we're upholding the NJB award because there was a contractual duty to negotiate and to arbitrate. Put aside the statute. That's one thing. Go to the NLRB about that. Did you have a last rebuttal point you wanted to get in? Yes. Thank you. The author of the camping case was on the panel in ION. And more than saying that they're abandoning ION, he said it was deserving, it was meeting its well-deserved death. And it stayed dead until this case. And so what was a bad decision under 8F is now being resurrected to be a bad decision involving the one-person unit rule. Only by taking ION construction, reviving it, and giving it this new life under the one-person unit rule will ION have any life whatsoever, because nobody's mentioned it in the 27 years since it was put to death by camping. Okay. Thank you. Thank you very much, counsel. The case just argued is submitted, and we will take a five-minute recess.
judges: N.R. Smith, Watford, R. Nelson